UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

———————————————————

|  |  |  |
|---|---|---|
| Conservation Law Foundation, Inc. | ) | |
| | ) | Case No. |
| Plaintiff, | ) | **COMPLAINT FOR DECLARATORY AND** |
| | ) | **INJUNCTIVE RELIEF AND CIVIL** |
| v. | ) | **PENALTIES** |
| Roland Teiner Company, Inc. | ) | |
| | ) | (Federal Water Pollution Control Act, |
| Defendant. | ) | 33 U.S.C. §§ 1251 to 1387) |

———————————————————

Conservation Law Foundation, Inc. ("CLF") by and through its counsel, hereby alleges:

**INTRODUCTION**

1.     This is a civil suit brought under the citizen suit enforcement provisions of the

Federal Water Pollution Control Act, 33 U.S.C. § 1251, et seq. (the "Clean Water Act,"

"the Act," or "CWA").  Plaintiff seeks declaratory judgment, injunctive relief, and other

relief the Court deems appropriate to correct the Defendant's violations of the CWA,

which include continuous and ongoing unauthorized discharges of polluted stormwater

runoff from its Everett, Massachusetts metal fabrication facility and machine shop into

waters of the United States and failure to comply with the EPA Multi-Sector General

Permit for Stormwater Discharges Associated With Industrial Activity ("MSGP" or

"Multi-Sector General Permit").

2.      The Mystic River watershed is home to approximately half a million people.  The watershed is also home to aquatic life, plants, and animal species that rely on the river, its tributaries, and adjacent wetlands for their survival.

3.      The CWA requires that states establish minimum water quality criteria and standards to protect human health and aquatic life.  CWA §§ 303-304, 33 U.S.C. §§ 1313-1314.

4.      Under the Massachusetts Surface Water Quality Standards, the Mystic River is "designated as a habitat for fish, other aquatic life and wildlife, including for their reproduction, migration, growth and other critical functions, and for primary and secondary contact recreation," and "shall have consistently good aesthetic value." 314 Mass. Code Regs. 4.05:4(b).

5.      The Massachusetts Surface Water Quality Standards establish minimum standards for a variety of pollutants, including but not limited to dissolved oxygen, temperature, pathogens (bacteria), solids, oil and grease, color and turbidity, taste and odor, nutrients, aesthetics, radioactivity, and toxic pollutants. 314 Mass. Code Regs. 4.05.

6.      The Massachusetts Department of Environmental Protection ("MassDEP") has found that levels of numerous pollutants including metals, oil and grease, organic enrichment/oxygen depletion, inorganic pollutants, pathogens, taste, color, odor, and ammonia consistently exceed the allowable levels under state water quality standards for the Mystic River.[1] The Malden River is a tributary of the Mystic River that joins the

---

[1] MassDEP, Integrated List of Waters (2008), *available at* http://www.mass.gov/dep/water/resources/08list2.pdf (last accessed Sept. 24, 2010).  The above pollutants are listed as exceeding allowable levels for the portion of the Mystic between the Amelia Earhart Dam and Boston Harbor. A Total Maximum Daily Load (TMDL) has not been established for the Mystic River. See EPA, Listed Water Information, Mystic River (2006), *available at* http://oaspub.epa.gov/tmdl/enviro.control?p_list_id=MA71-03&p_cycle=2006 (last visited Sept. 24, 2010).

Mystic River between the Amelia Earhart Dam and Boston Harbor, adjacent to Everett, Massachusetts. MassDEP has found that levels of pesticides, priority organic pollutants, organic enrichment, oxygen depletion, pathogens, oil and grease, taste odor and color, and suspended solids consistently exceed allowable levels under state water quality standards in the Malden River.

7.     Stormwater runoff is one of the major sources of contamination of the Mystic River and its tributaries.

8.     Stormwater discharges from Roland Teiner Company, Inc. contribute to the failure of the Mystic River and its tributary, the Malden River, to meet minimum water quality standards.

9.     Roland Teiner Company, Inc. ("Roland Teiner Co.") engages in industrial activities such as material handling and storage, and vehicle traffic in and out of the site. As precipitation comes into contact with pollutants generated by these activities, it picks up pollutants and is conveyed to nearby storm sewer systems and into the Mystic River and Malden River.

## JURISDICTION AND VENUE

10.     This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* (the "Clean Water Act" or the "CWA").  This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1) and 28 U.S.C. § 1331 (an action arising under the Constitution and laws of the United States).

11.    Plaintiff has complied with the statutory notice requirements under Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), and the corresponding regulations at 40 C.F.R. § 135.2.

12.    On July 14, 2010, Plaintiff provided notice of Defendant's violations of the Clean Water Act, and of its intention to file suit against Defendant by issuing a 60-day notice letter ("Notice Letter") through certified mail to Roland Teiner Co. by its owner and/or managing agent, Elfriede Teiner, regarding Roland Teiner Co.'s violations of the Clean Water Act and of CLF's intention to file suit against Roland Teiner Co. (referred to as "Owner/Operator" or "Defendant").  33 U.S.C. § 1365(a)(1); 40 C.F.R. § 135.2(a)(1).  A copy of the Notice Letter was also sent to the registered agent for Roland Teiner Co., Brian Teiner, as required by 40 C.F.R. § 135.2(a)(1).

13.    Copies of the Notice Letter were sent to the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region I, and the Commissioner of the Massachusetts Department of Environmental Protection ("Mass DEP") pursuant to the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1).

14.    A true and correct copy of CLF's Notice Letter is attached as Exhibit A, and is incorporated by reference.

15.    More than sixty days has passed since the Notice Letter was served on Defendant and the state and federal agencies.

16.    Neither the EPA nor the Commonwealth of Massachusetts has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint. 33 U.S.C. § 1365(b)(1)(B).

17.     Venue is proper in the District Court of Massachusetts pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## PARTIES

18.     Plaintiff Conservation Law Foundation, Inc. (CLF) is a not-for-profit corporation incorporated under the laws of the Commonwealth of Massachusetts and with a principal place of business at 62 Summer Street, Boston, MA, 02110.

19.     CLF's mission includes the conservation and protection of the many uses of the waters in and around the Mystic River watershed for, among other things, fishing, recreation, boating, scenic and aesthetic enjoyment, and scientific purposes.  To further these goals, CLF actively seeks federal and state agency implementation of the Clean Water Act and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

20.     Members of CLF live on or near the Mystic River and its tributaries, and use and enjoy the watershed for recreational, aesthetic, and scientific purposes.

21.     Discharges of pollutants by Defendant adversely affect CLF's members' use and enjoyment of the Mystic River watershed.

22.     The interests of CLF's members have been, are being, and will continue to be adversely affected by the Owner's and Operator's failure to comply with the Clean Water Act and the MSGP. The relief sought will redress the harms to Plaintiff by Defendant's activities.  Continuing commission of the acts and omissions alleged above have and will continue to irreparably harm Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

23.     Roland Teiner Company, Inc. is a corporation organized under the laws of the State of Massachusetts, with its principal place of business at 134 Tremont Street, Everett, Massachusetts.

24.     Elfriede Teiner is the President of Roland Teiner Company, Inc.

25.     Brian Teiner is the registered agent for Roland Teiner Company, Inc.

26.     Roland Teiner Company, Inc. operates a metal fabrication facility and machine shop located at 134 Tremont Street, Everett, Massachusetts, 02149 (the "Facility" or "Roland Teiner Co.").

27.     Roland Teiner Co. maintains, operates, and is responsible for industrial activities at the Facility.

## STATUTORY BACKGROUND

### The Clean Water Act

28.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States from a "point source," unless the discharge complies with various enumerated sections of the CWA.  Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a valid National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p).

29.     "Point source" is defined broadly under Section 502(14) of the CWA to include, "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

30.     Congress amended the Clean Water Act in 1987 to require that certain industrial

facilities obtain stormwater discharge permits. Water Quality Act of 1987, Pub. L. No.

100-4, § 405, 101 Stat 7 (1987); see 55 Fed. Reg. 47990, 47991-93 (Nov. 16, 1990).

31.     Section 402 of the CWA requires that NPDES permits be issued for stormwater

discharges associated with industrial activities.  CWA §§ 402(a)(1), 402(p)(2),

402(p)(3)(A), 402(p)(4), 402(p)(6); 33 U.S.C. §§ 1342(a)(1), 1342(p)(2), 1342(p)(3)(A),

1342(p)(4), 1342(p)(6).

32.     EPA regulations set forth at 40 C.F.R. § 122.26 required industrial dischargers to

submit applications for permit coverage no later than October 1, 1992.  In September

1995, EPA issued a NPDES Storm Water Multi-Sector General Permit for Industrial

Activities ("1995 MSGP"). EPA re-issued the Multi-Sector General Permit for Industrial

Activities on October 30, 2000 ("2000 MSGP"), 65 Fed. Reg. 64746. EPA re-issued the

Multi-Sector General Permit for Industrial Activities on September 29, 2008 ("2008

MSGP"), 73 Fed. Reg. 56572.

33.     In establishing these regulations, EPA cited abundant data showing the harmful

effects of stormwater runoff on rivers, streams, and coastal areas across the nation. In

particular, EPA found that runoff from industrial facilities contained elevated pollution

levels. 55 Fed. Reg. 47990, 47991 (Nov. 16, 1990).

34.     EPA has not delegated authority to the Commonwealth of Massachusetts to

implement a NPDES permitting program under the Clean Water Act.  Therefore, EPA is

the NPDES permitting authority in Massachusetts.

35.     The MSGP is issued by EPA pursuant to Sections 402(a) and 402(p) of the CWA

and regulates stormwater discharges from industrial facilities.  33 U.S.C. §§ 1342(a),

1342(p). In order to discharge stormwater lawfully, industrial dischargers must obtain coverage under the MSGP and comply with its terms.

36.     Industrial dischargers are required to file a complete and accurate Notice of Intent ("NOI") to be covered by the MSGP.

37.     Industrial dischargers must also develop and implement a Stormwater Pollution Prevention Plan ("SWPPP") prior to filing an NOI.  The SWPPP must identify and evaluate sources of pollutants associated with industrial discharges from the facility, and identify and implement effective Best Management Practices ("BMPs") to control pollutants in stormwater discharges in a manner that achieves the substantive requirements of the permit.

38.     If a facility meets certain conditions including covering all industrial materials and activities so that exposure of pollutants to stormwater runoff is prevented, the facility may submit a certification stating that it is eligible for a conditional exemption from the permit requirements of the MSGP based on "no-exposure."  40 C.F.R. § 122.26(g); MSGP, App. K. In order to obtain the "no-exposure" exemption, the facility must affirmatively submit a complete and accurate certification form to EPA.  Such certification must be re-submitted every five years. 40 C.F.R. § 122.26(g).  If the facility's operations or site conditions change such that it is no longer eligible for the conditional exemption, the facility becomes subject to the requirements of industrial stormwater permit program and is obligated to immediately obtain coverage under the MSGP and comply with the permit. 40 C.F.R. § 122.26(g); MSGP App. K.

39.     Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), provides for citizen enforcement actions against any "person" who is alleged to be in violation of an "effluent

standard or limitation . . . or an order issued by the Administrator or a State with respect to such a standard or limitation."

40.     Such enforcement action under CWA Section 505(a) includes an action seeking remedies for unauthorized discharge under Section 301 of the CWA, 33 U.S.C § 1311, as well as for violation of a permit condition under Section 402 of the CWA, 33 U.S.C. § 1342, and Section 505(f) of the CWA, 33 U.S.C. § 1365(f).

41.     Each separate violation of the Clean Water Act subjects the violator to a penalty of up to $27,500 per day per violation for all violations occurring before or on March 15, 2004, $32,500 per day per violation for all violations occurring after March 15, 2004, and $37,500 per day per violation for all violations occurring after January 12, 2009, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 19.1 – 19.4.


## FACTS

42.     Roland Teiner Company, Inc. is located at 134 Tremont Street, Everett, MA 02149.

43.     Roland Teiner Company, Inc. has operated and continues to operate a metal fabrication facility and machine shop at this location since at least 1947 ("the Facility").

44.     Stormwater from the Facility has discharged and continues to discharge into the Malden and Mystic River via storm in the vicinity of the facility and/or other conveyances including drainage ditches, pipes, channels, and wetlands with a direct hydrologic connection to the Malden River.

45.   The Facility's primary activity falls under Standard Industrial Classification

("SIC") Code of 3469, the listed codes in Appendix D of the MSGP, and/or the activities

listed in 40 C.F.R. § 122.26(b)(14).

46.   Roland Teiner Company, Inc. engages in industrial activities such as the purchase,

collection, processing and storage of materials and the operation and storage of

equipment.

47.   Industrial materials used and/or stored at the Facility are exposed to precipitation,

including, but not limited to metal materials, supplies and/or equipment, wood pallets and

treated and/or untreated wood materials, cement blocks, a dumpster and/or other

equipment, trash and other discarded items.  These materials contain or are contaminated

with the pollutants listed at paragraph 49, below.

48.   The sources of pollutants associated with the industrial activities at Roland Teiner

Company, Inc. include: metal materials, supplies and/or equipment, wood pallets and

treated and/or untreated wood materials, cement blocks, trash, and other discarded items.

Such materials are used, transferred and stored in uncovered storage areas, driveways,

loading-unloading areas, parking areas, and on-site material handling areas at the Facility.

49.   Pollutants are therefore present in stormwater discharged from Roland Teiner

Company, Inc. including, but not limited to, metals, nutrients (phosphorus and nitrogen);

petroleum products including oil, fuel, grease, transmission and brake fluids, hydraulic

fluids; acids and solvents; sediment and total suspended solids; pH-affecting substances;

fugitive and other dust, dirt, and debris, and increased temperature.

50.     Roland Teiner Company, Inc. has operated and continues to operate trucks and other vehicles associated with its industrial activities that enter and exit the site via driveways or access roads.

51.     These vehicles transport pollutants including hydrocarbons (oil, grease, fuel), metals, total suspended solids, sediment, road salt (which in turn contains chlorides, sodium, and impurities), onto and off of the site and into the nearby storm drains and into the waters of the United States.

52.     During every measurable precipitation event and every instance of snowmelt, water flows onto and over exposed materials and accumulated pollutants at the Facility, generating stormwater runoff.

53.     Stormwater runoff from the Facility is contaminated with pollutants from the activities referenced at paragraphs 45-52.  Stormwater runoff from the Facility is conveyed to the City of Everett stormwater system and into the Malden and Mystic Rivers.  Stormwater runoff from the facility is not treated to remove the pollutants referenced at paragraph 49, above, before it is discharged into the Malden and Mystic Rivers.

54.     EPA considers precipitation above 0.1 inches during a 24 hour period a measurable precipitation event.  40 C.F.R. § 122.26(c)(i)(E)(6).

55.     A measurable precipitation event is sufficient to generate runoff from Roland Teiner Company, Inc.

56.     The MSGP specifically references snowmelt as a form of stormwater discharge that must be addressed by a discharger in its control measures. MSGP Part 2.1.2.1.

57.    Roland Teiner Company, Inc. has discharged and continues to discharge stormwater containing pollutants from the activities referenced at paragraphs 44-53 above to the City of Everett's storm drain system and into the Malden River.

58.    The Malden River flows into the Mystic River, which flows into Boston Harbor, which flows into the Atlantic Ocean, all of which are "waters of the United States," as defined in 40 C.F.R. § 122.2, and therefore, "navigable waters," as defined in 33 U.S.C. § 1362(7).

59.    Massachusetts' Impaired Waters List identifies the Mystic River and the Malden River as impaired water bodies pursuant to Section 303(d) of the CWA, 33 U.S.C. § 1313(d).[2]

60.    Roland Teiner Company, Inc. has not met and continues to fail to meet the requirements to obtain authorization to discharge stormwater under the MSGP or another valid NPDES permit.

61.    Roland Teiner Company, Inc. has failed to install and implement control measures in accordance with the MSGP.

62.    Roland Teiner Co. has not developed and implemented a SWPPP that meets the requirements of MSGP Part 5.

63.    Roland Teiner Co. has not filed an NOI to be covered by the MSGP.

64.    Roland Teiner Co. has not submitted a certification to EPA stating that it qualifies for a conditional exemption from the requirements of the MSGP because it meets the

---

[2] MassDEP, Integrated List of Waters (2008), *available at* http://www.mass.gov/dep/water/resources/08list2.pdf (last accessed Sept. 24, 2010); EPA, Listed Water Information, Mystic River (2006), *available at* http://oaspub.epa.gov/tmdl/enviro.control?p_list_id=MA71-03&p_cycle=2006 (last visited September 24, 2010).

criteria in 40 C.F.R. § 122.26(g) and the conditions in MSGP Appendix K for "no-exposure" of pollutants to the elements at the facility.

## CLAIMS FOR RELIEF

### First Cause of Action:  Failure to Obtain and Comply with a Permit for Industrial Discharges

65.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

66.     Roland Teiner Company, Inc. is an industrial discharger with a primary industrial activity falling under a SIC Code of 3469 or another activity listed in Sector AA of Appendix D of the MSGP or at 40 C.F.R. § 122.26(b)(14).

67.     Roland Teiner Co. is required to obtain permit coverage and comply with the MSGP pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

68.     Roland Teiner Co. has failed and continues to fail to obtain permit coverage and comply with the MSGP pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

69.     Roland Teiner Co. is not eligible for a conditional exemption from the requirements of 40 C.F.R. 122.26 and the MSGP, because pollutant-generating industrial activities and materials have been, and continue to be, exposed to the elements at the Facility.

70.     Each and every day since 1995 on which Roland Teiner Co. has not obtained permit coverage and complied fully with the MSGP is a separate and distinct violation of Section 402 of the CWA, 33 U.S.C. § 1342.

### Second Cause of Action:  Unauthorized Discharge of Pollutants Into Waters of the United States

71.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

72.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from any "point source" to waters of the United States, except for discharges in compliance with a NPDES permit issued pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p).

73.     In order to be authorized to discharge lawfully under the MSGP, a facility must meet requirements set forth in Part 1.3.1 of the MSGP.  These include:

      (a)  meeting the eligibility requirements in Part 1.1 of the MSGP;

      (b)  selecting, designing, installing, and implementing control measures in accordance with MSGP Part 2.1;

      (c)  developing a SWPPP according to MSGP Part 5; and

      (d)  filing a complete and accurate NOI to seek coverage under the MSGP.

74.     Roland Teiner Co. is an industrial discharger with a primary SIC Code of 3469 and/or another activity listed under Appendix D of the MSGP or 40 C.F.R. § 122.26(b)(14),which means it is obligated to apply for coverage under the MSGP or other legal authorization.

75.     Roland Teiner Co.'s industrial activities have resulted and continue to result in "stormwater discharge associated with industrial activity" within the meaning of 40 C.F.R. § 122.26(b)(14) into the Everett, MA stormwater system and into the Malden River and the Mystic River on every day of precipitation greater than 0.1 inches and every instance of snowmelt.

76.    Roland Teiner Co.'s discharges of stormwater associated with industrial activity ("industrial stormwater discharges") are discharges of pollutants within the meaning of 33 U.S.C. § 1362(12).  Roland Teiner Co.'s industrial stormwater discharges are "point source" discharges into waters of the U.S.

77.    Roland Teiner Co.'s industrial stormwater discharges have caused and continue to cause discharges of pollutants to waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

78.    Since at least 1995, Roland Teiner Co. has discharged and continues to discharge industrial stormwater without meeting requirements for authorization to discharge under a valid NPDES permit as required by Section 301(a), 33 U.S.C. § 1311(a), and Section 402(p)(2)(B) of the CWA, 33 U.S.C. § 1342(p)(2)(B).

79.    Since at least 1995, Roland Teiner Co. has discharged and continues to discharge pollutants to an impaired waterbody, causing or contributing to an exceedance of water quality standards.

80.    Each and every day since 1995 on which Roland Teiner Co. has discharged and continues to discharge pollutants without authorization under a valid NPDES permit constitutes a distinct violation of Section 301(a), 33 U.S.C. § 1311(a) and Section 402 of the CWA, 33 U.S.C. § 1342.

**Third Cause of Action:  Failure to Submit to EPA a Complete Notice of Intent to be Covered under the MSGP in Violation of the MSGP and the Clean Water Act. (Violations of  MSGP Part 1.3.1**)

81.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

82.     Industrial dischargers are required to submit to EPA a complete and accurate NOI to be covered under the MSGP pursuant to MSGP Part 1.3.1.

83.     Roland Teiner Co. has failed and continues to fail to submit to EPA a complete and accurate NOI to be covered under the MSGP pursuant to MSGP Part 1.3.1.

84.     Roland Teiner Co. has failed and continues to fail to develop and implement a SWPPP meeting the requirements of MSGP Part 5 before submitting an NOI for coverage.

85.     Each and every day since 1992 on which Roland Teiner Co. has not filed a complete and accurate NOI, is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

**Fourth Cause of Action: Failure to Comply with MSGP Requirements for New Dischargers to an "Impaired Water" (Violations of MSGP Part 1.1.4.7)**

86.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

87.     Roland Teiner Co. is a new discharger under the MSGP as it has not previously sought coverage under the previous MSGP permits EPA has issued.

88.     The Mystic River is identified as impaired due to excessive levels of metals, oil and grease, organic enrichment/oxygen depletion, inorganics, pathogens, toxic organics, taste, color, odor, and ammonia.

89.     The Malden River, a tributary of the Mystic River, is identified as impaired due to excessive levels of pesticides, priority organics, organic enrichment/oxygen depletion, pathogens, oil and grease, suspended solids, taste, color, odor, and other objectionable deposits.

90.    Roland Teiner Co. has discharged and continues to discharge stormwater contaminated with some or all of the pollutants listed in paragraphs 88-89 above, including metals, oil, grease, solvents, nutrients, pathogens, dissolved solids, organic matter, inorganic chemicals, oxygen demand, trash, and other pollutants associated with Roland Teiner Co.'s operations.

91.    New dischargers to impaired waters are required to take one of the following actions prior to obtaining permit coverage:

    (a) prevent all exposure of pollutants for which a water body is impaired pursuant to MSGP Part 1.1.4.7(a); or

    (b) document that the pollutants for which a water body is impaired are not present at the facility and retain documentation for this finding with a SWPPP pursuant to MSGP Part 1.1.4.7(b); or

    (c) provide EPA Region 1 with data to support a showing that the discharge is not expected to cause or contribute to an exceedance of a water quality standard by showing that the discharge of the pollutant for which the water body is impaired will meet instream water quality criteria at the point of discharge to the waterbody and retain such data in a SWPPP pursuant to MSGP Part 1.1.4.7(b)(i).

92.    Roland Teiner Co. has failed to and continues to fail to prevent all exposure of pollutants for which the Mystic River is impaired pursuant to MSGP Part 1.1.4.7(a).

93.    Roland Teiner Co. has failed and continues to fail to document that the pollutants for which the Mystic River is impaired are not present at Roland Teiner Co., nor has

Roland Teiner Co. retained documentation for this finding with a SWPPP pursuant to MSGP Part 1.1.4.7(c).

94.     Roland Teiner Co. has not provided and continues to fail to provide EPA Region 1 with data supporting a showing that the discharge is not expected to cause or contribute to an exceedance of a water quality standard by showing that the discharge of the pollutant for which the Malden River is impaired will meet instream water quality criteria at the point of discharge to the Malden River, nor has Roland Teiner Co. retained such data in a SWPPP pursuant to MSGP Part 1.1.4.7(c)(i).

95.     Therefore, Roland Teiner Co. has not met and continues to fail to meet the permit requirements applicable to new dischargers.

96.     Each and every day since 1995 on which Roland Teiner Co. has failed and continues to fail to comply with the MSGP requirements for new dischargers into impaired waters, constitutes a separate and distinct violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) and Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

**Fifth Cause of Action:  Failure to Develop and Implement a SWPPP in Violation of the MSGP and the Clean Water Act.  (Violations of MSGP Part 5)**

97.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

98.     Industrial dischargers are required to develop and implement a SWPPP and to retain a copy of the SWPPP at the facility at all times together with all other required inspection, monitoring, and certification records that demonstrate full compliance with the Permit, pursuant to MSGP Part 5.

99.     Roland Teiner Co. has failed and continues to fail to develop and implement an adequate SWPPP prior to submitting an NOI for coverage.

100.    Roland Teiner Co.'s ongoing failure to develop and implement an adequate SWPPP is evidenced by, *inter alia*, the outdoor uncovered storage of industrial materials, including waste materials, without appropriate BMPs; the continued exposure of industrial material to stormwater flows; the failure to either treat stormwater prior to discharge or to implement effective containment practices; and the continued discharge of stormwater pollutants.

101.    Roland Teiner Co. has failed and continues to fail to retain a copy of an adequate SWPPP and all other required documentation at the facility at all times pursuant to MSGP Part 5.4.

102.    Each and every day since 1995 on which Roland Teiner Co. has failed and continues to fail to develop and fully implement an adequate SWPPP for Roland Teiner Co. and to keep such SWPPP on file at the Facility together with all other required documentation, is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

**Sixth Cause of Action:  Failure to Take Control Measures and Meet Water Quality-Based Effluent Limitations in Violation of the MSGP and the Clean Water Act.  (Violations of MSGP Part 2**)

103.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

104.    Industrial dischargers are required to take control measures and meet water quality-based effluent limitations pursuant to MSGP Part 2.

105.     Industrial dischargers must "minimize" exposure of manufacturing, processing, and material storage areas to precipitation, snowmelt, and runoff meaning "reduce and/or eliminate" such exposures "to the extent achievable using control measures, including best management practices, that are technologically available and economically practicable and achievable in light of best industry practice," pursuant to MSGP Part 2.1.

106.     The control measures must meet the standards set by Best Practicable Control Technology/Best Available Technology Economically Achievable/Best Conventional Pollutant Control Technology (BPT/BAT/BCT) standards and must comply with all non-numeric effluent limits set forth at Part 2.1.2 of the MSGP, including requirements for good housekeeping, maintenance, spill prevention and response, erosion and sediment control, salt storage, employee training, prevention of discharge of waste, garbage, and floatable debris to receiving waters, eliminating non-stormwater discharges, and dust generation and vehicle tracking of industrial materials. MSGP Part 2.1.1.

107.     The control measures must "divert, infiltrate, reuse, contain, or otherwise reduce stormwater runoff, to minimize pollutants in your facility's discharges." MSGP Part 2.1.2.6.

108.     Industrial dischargers must select, design, install, and implement the control measures referenced in paragraphs 103-106 above in accordance with good engineering practices and manufacturer's specifications.  MSGP Part 2.1. The control measures must be modified if the facility finds that it is not achieving the effect of minimizing pollutant discharges. MSGP Part 2.1.

109.    Roland Teiner Co. has operated and continues to operate in a manner that exposes industrial materials to pollutants without implementing BMPs that achieve the BPT/BAT/BCT standard and comply with all non-numeric effluent limitations.

110.    Every and every day since 1995 on which Roland Teiner Co. has operated and continues to operate without implementing BMPs that achieve the BPT/BAT/BCT standard, and comply with all non-numeric effluent limitations pursuant to the MSGP, is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

111.    Discharges from the facility must be controlled as necessary to meet applicable water quality standards. MSGP Part 2.2.1.

112.    Since at least 1995, Roland Teiner Co. has discharged pollutants listed at paragraph 47, above, into the Malden River and Mystic River. Mass DEP has listed these rivers as impaired for, among other things, pesticides, suspended solids, metals, oil and grease, organic enrichment/oxygen depletion, inorganics, pathogens, toxic organics, taste, color, odor, and ammonia.

113.    Roland Teiner Co.'s discharges are not controlled as necessary to meet applicable water quality standards.

114.    Each and every day since 1995 on which Roland Teiner Co. has failed to implement control measures and meet water-quality based effluent limitations in violation of the MSGP is a separate and distinct violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) and Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

**Seventh Cause of Action:  Failure to Conduct Facility Inspections in Violation of the MSGP and the Clean Water Act.  (Violations of MSGP Part 4)**

115.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

116.    Industrial dischargers are required to conduct and document routine facility inspections pursuant to MSGP Part 4.1, in no cases less frequently than once per quarter.

117.     Roland Teiner Co. has failed and continues to fail to conduct comprehensive routine facility inspections pursuant to MSGP Part 4.1.

118.    Each and every day since 1995 on which Roland Teiner Co. has operated and continues to operate without conducting routine facility inspections pursuant to MSGP is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

119.    Industrial dischargers are required to collect a wet-weather stormwater sample from each outfall at the facility once each quarter throughout the permit term, to assess such sample for the presence of indicators of stormwater pollution, and to retain documentation of such visual assessments, pursuant to MSGP Part 4.2.

120.    Roland Teiner Co. has failed and continues to fail to collect a wet-weather stormwater sample from each outfall, to inspect the sample for indicators of pollution, and to document such assessment, pursuant to MSGP Part 4.2.

121.    Each and every day since 1995 on which Roland Teiner Co. has operated and continues to operate without conducting required wet-weather sampling and visual assessment and retaining documentation pursuant to MSGP is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

122.    Industrial dischargers are required to conduct annual comprehensive site inspections, to document such annual inspections, and to submit the results of such inspections to EPA, pursuant to MSGP Part 4.3.

123.    Roland Teiner Co. has failed and continues to fail to conduct and document such comprehensive site inspections and to submit the results of such inspections to EPA pursuant to MSGP Part 4.3.

124.    Each and every day since 1995 on which Roland Teiner Co. has operated and continues to operate without conducting and documenting the required comprehensive site inspection and submitting such documentation to EPA pursuant to MSGP Part 4.3 is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

**Eighth Cause of Action:  Failure to Comply with the Required Monitoring and Sampling Procedures in Violation of the MSGP and the Clean Water Act. (Violations of MSGP Part 6)**

125.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

126.    Industrial dischargers are required to comply with the required monitoring and sampling procedures pursuant to MSGP Part 6.

127.    Roland Teiner Co. has failed and continues to fail to comply with the required benchmark monitoring and sampling procedures pursuant to MSGP Part 6.2.1.  As a result, Roland Teiner Co. has also failed to take any required review of control measures, additional monitoring, and corrective actions that would have been triggered by benchmark monitoring.

128.     Each and every day since 1995 on which Roland Teiner Co. has operated and continues to operate without complying with the required benchmark monitoring and sampling procedures pursuant to MSGP Part 6 is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

129.     Roland Teiner Co. has failed and continues to fail to comply with the required impaired waters monitoring pursuant to MSGP Part 6.2.4.

130.     Each and every day since 1995 on which Roland Teiner Co. has failed and continues to fail to comply with the required impaired waters monitoring pursuant to the MSGP is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311, and Section 402 of the CWA, 33 U.S.C. § 1342.


**Ninth Cause of Action:  Failure to Carry Out the Required Reporting and Recordkeeping in Violation of the MSGP and the Clean Water Act. (Violations of MSGP Part 7**)

131.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

132.     Industrial dischargers are required to carry out the required reporting and recordkeeping pursuant to MSGP Part 7.

133.     Reporting and recordkeeping requirements under the MSGP Part 7 include:

     (a)  Reporting monitoring data to EPA pursuant to MSGP Part 7.1;

     (b)  Preparing and submitting an annual report containing specified information to EPA, pursuant to MSGP Part 7.2;

(c)  Submitting an exceedance report to EPA if follow-up monitoring after a
     benchmark exceedance exceeds a numeric effluent limit, pursuant to MSGP
     Part 7.3;

(d)  Completing additional reporting and submitting such reports to the
     appropriate EPA office, including: reporting of any noncompliance within the
     specified time period; notifying EPA as soon as the facility has knowledge of
     a leak, spill, or other release containing oil or a hazardous substance in a
     reportable quantity; notifying EPA of certain planned changes to the facility;
     submitting a complete and accurate NOI in the event of transfer of ownership
     and operation; and correcting or supplementing facts in the facility's NOI or
     any other report, pursuant to MSGP Part 7.4; and

(e)  Retaining copies of the SWPPP including any modifications, along with
     additional documentation required under Part 5.4, all reports and certifications
     required by the permit, monitoring data, and records of data used to complete
     the NOI, for a period of at least 3 years from the date on which permit
     coverage expires or is terminated. MSGP Part 7.5.

134.   Roland Teiner Company,, Inc. has failed and continues to fail to carry out the
required reporting and recordkeeping pursuant to MSGP Part 7.

135.   Each and every day since 1995 on which Roland Teiner Company,, Inc. has
operated and continues to operate without carrying out the required reporting and
recordkeeping pursuant to MSGP is a separate and distinct violation of the MSGP and
Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

**Tenth Cause of Action:  Failure to Comply with the Requirements of MSGP Subpart AA-Fabricated Metal Products in Violation of the MSGP and the Clean Water Act.  (Violations of MSGP Part 8 Subpart AA)**

136.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

137.    Fabricated metal products facilities are required to comply with the requirements of MSGP Part 8 Subpart AA-Fabricated Metal Products ("MSGP Part 8 Subpart-AA"). Such requirements include:

  (a)  implementing additional technology-based effluent limitations (MSGP Part 8.AA.2);

  (b)  meeting additional SWPPP and inspection requirements (MSGP Part 8.AA.3 and Part 8.AA.4); and

  (c)  monitoring stormwater discharges for compliance with the benchmark pollutant limitations applicable specifically to fabricated metal products facilities (MSGP Part 8.AA.5).

138.    Roland Teiner Co. has not implemented and continues to fail to implement additional technology-based effluent limitations pursuant to MSGP Part 8 Subpart-AA, pursuant to MSGP Part 8.AA.2.

139.    Roland Teiner Co. has not met and continues to fail to meet additional SWPPP requirements pursuant to MSGP Part 8 Subpart-AA, pursuant to MSGP Part 8.AA.3.

140.    Roland Teiner Co. has not met and continues to fail to meet the additional inspection requirements of the MSGP Part 8 Subpart-AA, pursuant to MSGP Part 8.AA.4.

141.    Roland Teiner Co. has failed and continues to fail to monitor stormwater discharges for compliance with the benchmark pollutant limitations applicable specifically to fabricated metal product facilities of the MSGP Part 8 Subpart-AA, pursuant to MSGP Part 8.AA.5.

142.    Each and every day since 1995 on which Roland Teiner Co. has operated and continues to operate without carrying out required sector-specific activities pursuant to MSGP Part 8 is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

143.    Roland Teiner Co.'s violations of the CWA are on-going and continuous, are capable of repetition, and result from the same underlying and inadequately resolved causes.

## RELIEF REQUESTED

144.    Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

   (a)    Declare Defendant to have violated and to be in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), for its unlawful and unauthorized discharges of pollutants;

   (b)    Declare Defendant to have violated and to be in violation of Section 402 of the CWA, 33 U.S.C. § 1342, for its failure to seek coverage under the Multi-Sector General Permit and failure to comply with all applicable requirements of the MSGP;

   (c)    Enjoin Defendant from discharging pollutants from Roland Teiner Co. and to the surface waters surrounding and downstream from Roland Teiner

27

Co., except as authorized by and in compliance with a National Pollutant Discharge Elimination Permit;

(d)    Order Defendant to comply fully and immediately with all applicable requirements of the Multi-Sector General Permit;

(e)    Order Defendant to pay civil penalties of $27,500 per day per violation for all violations occurring before or on March 15, 2004, $32,500 per day per violation for all violations occurring after March 15, 2004, and $37,500 per day per violation for all violations occurring after January 12, 2009, for each violation of the CWA pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 19.1 – 19.4;

(f)    Order Defendant to take appropriate actions to restore the quality of the waters impaired by its discharges and to remedy harm to the surrounding ecosystems and communities affected by their noncompliance with the CWA;

(g)    Award Plaintiff's costs (including reasonable investigative, attorney, witness, and consultant fees) as permitted by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

(h)    Award any such other and further relief as this Court may deem appropriate.

Dated:  September 28, 2010        Respectfully submitted,

/s/Cynthia E. Liebman (BBO #665528)
Conservation Law Foundation

28

62 Summer Street
Boston, MA 02110
Phone: 617-350-0990 x 744
Fax: 617-350-4030


Sheryl Dickey
Vermont Law School
Environmental and Natural Resources
Law Clinic
164 Chelsea Street
P.O. Box 96
South Royalton, VT 05068
Phone: 802-831-1626
Fax: 802-831-1631

Attorneys for Plaintiff
CONSERVATION LAW FOUNDATION